**BUZEK et v STEWART, Mayor et**

Common Pleas Court, Hamilton Co.

No. A-70348. Decided June 10, 1940.

Francis A. Hoover and John Clark Molloy, Cincinnati, for plaintiffs.

John D. Ellis, city solicitor and Henry M. Bruestle, assistant city solicitor, Cincinnati, for defendants.

## OPINION

By BELL, J.

The plaintiffs are taxpayers, and bring this action on behalf of themselves, the city, and all other taxpayers. The defendants are the mayor, manager, treasurer, auditor and clerk of council of the City of Cincinnati.

The petition, after fixing the status of the parties and setting forth jurisdictional facts resulting in plaintiffs' right to maintain the action, seeks to enjoin the city from issuing bonds of the city in the sum of five million ($5,000,000) dollars, for the purpose of paying the city's portion of certain improvements for the prevention of damage by floods in the Ohio river and its tributaries.

The petition sets forth that on September 1, 1937, city council passed a resolution in part as follows:

"A RESOLUTION

"Declaring the necessity and authorizing the submission to a vote of the people of a bond issue in the sum of five million ($5,000,000) dollars for the purpose of paying the city's portion of the cost and expense of installing the necessary structures and making the necessary improvements for the prevention of damage by floods in the Ohio river and its tributaries, including the acquisition of real estate or easements, or other interests in real estate necessary therefor, and paying damages incidental thereto; the constructing of main and lateral ditches, sewers, canals, levees, dikes, dams, sluices, revetments, retaining walls, bulkheads, culverts, approaches. flood gates, waterways, drains, reservoirs, holding basins, floodways,

wells, intakes, valves, pipe lines, pumping stations and siphons, interceptor sewers for the transmission of sewage and other liquid wastes, necessary work for the purifying and disposing of such sewage and liquid wastes, and any other works or improvements deemed necessary in connection therewith; the constructing, elevating, widening or extending of streets, roads, thoroughfares, avenues, bridges, viaducts and other public ways in connection therewith; and the doing of all other things necessary or incidental to the fulfillment of such flood prevention purpose; and further declaring the necessity of the levy of a tax outside of the limitation imposed by Art. XII, Sec. 2, of the Constitution of Ohio, to pay the interest on and retire said bonds."

Said resolution further declared:

"the necessity of a bond issue for said purpose in the sum of five million ($5,000,000) dollars by a vote of the people, and the levy of a tax out side of the limitations upon tax rates prescribed by law to pay the interest on and retire said bonds; the proposed bonds to be dated approximately March 1, 1938, and to mature in thirty (30) equal or substantially equal annual installments following their authorization, and to bear interest at the rate now estimated at three per cent (3%) per annum, payable semi-annually."

It is alleged that said resolution did not state specifically what improvements council contemplated for the prevention of damage by floods; did not state where the physical improvements were to be erected, and did not fix the rate of interest in said resolution, as provided by law.

It is alleged that on September 8, 1937, the council passed a resolution in part as follows:

"A RESOLUTION

"Determining to proceed with the issue of bonds and authorizing and directing the board of elections of Hamilton County to prepare the ballots and make other necessary arrangements for the submission to the voters of the City of Cincinnati of the question:

" 'Shall bonds be issued by the City of Cincinnati for the purpose of paying the city's portion of the cost and expense of installing the necessary structures and making the necessary improvements for the prevention of damage by floods in the Ohio river and its tributaries, including the acquisition of real estate or easements or other interests in real estate necessary therefor, and paying damages incidental thereto; the constructing of main and lateral ditches, sewers, canals, levees, dikes, dams, sluices, revetments, retaining walls, bulkheads, culverts, approaches, flood gates, water ways, drains, reservoirs, holding basins, flood-ways, walls, intakes, valves, pipe lines, pumping stations and siphons, interceptor sewers for the transmission of sewage and other liquid wastes, necessary works for the purifying and disposing of such sewage and liquid wastes, and any other works or improvements deemed necessary in connection therewith; the constructing, elevating, widening or extending of streets, roads, thoroughfares, avenues, bridges, viaducts and other public ways in connection therewith; and the doing of all other things necessary or incidental to the fulfillment of such flood prevention purpose, in the sum of five million ($5,000,000) dollars, and a levy of taxes to be made outside of the ten mill limitation, estimated by the county auditor to average .307 mills for the maximum period of thirty (30) years to pay the principal and interests on said bonds.' "

Plaintiffs then allege that pursuant to said resolution the question was submitted to a vote of the electors in the form set out without any explanation of said resolution having been furnished the electors as provided by law. It is then set forth that on February 21, 1940, council passed a resolution providing in part as follows:

"Section 1. That the City of Cincinnati, Ohio, does agree and hereby assures the secretary of war that it will:

(a) Provide without cost to the United States, all lands, easements, and rights of way, necessary for the construction of flood protection works, including levees, walls, drainage structures, pump and all other necessary structures and installations for the proper protection of the Millcreek Valley, said flood protection works to extend from a point in Baymiller street north of Sixth street southwardly and westwardly to a point west of Evans street;

· "(b) Hold and save the United States free from damages due to the construction works;

"(c) Maintain and operate all the works after completion in accordance with regulations prescribed by the secretary of war.

"Section 2. That the city manager is hereby authorized and directed to execute and deliver for and in behalf of the City of Cincinnati, to the United States any and all instruments which may be required by the United States consistent with the commitments hereinbefore set forth."

Plaintiffs allege that the charter of the city provides that whenever the city planning commission shall have made a plan of the city, no structure shall be authorized to be constructed until and unless the location thereof shall be first approved by the commission. It is alleged that the planning commission did make and adopt a plan of the city and that the location and construction of the proposed improvements were not approved prior to the submission of the question of authority to issue bonds being submitted to the electors.

Plaintiffs allege that the city is about to issue bonds pursuant to the resolution; that the city is about to acquire real estate in connection with a proposed plan of improvement; that the manager is about to enter into a contract with the Government of the United States in conformity with the resolution of February 21, 1940, all of which acts it is claimed are contrary to law, will result in the illegal expenditure of public money, and that the taxpayers have no adequate remedy at law. The petition prays that an injunction may issue to prevent the commission of the claimed unlawful acts.

These are the material allegations of the petition, and sufficiently state the facts necessary to an understanding of the nature of plaintiffs' complaint.

To the petition the defendants filed a general demurrer upon the sole ground that the petition does not state facts sufficient to constitute a cause of action.

This petition in my opinion attempts to set up two separate and distinct causes of action, although not separately stated and numbered. No motion was filed to separately state and number, and no question raised as to misjoinder of causes of action.

First: Plaintiffs contest the legality of the proceedings to issue the bonds.

Second: Plaintiffs contest the legality of the proposed use of the proceeds of the bonds.

It is perfectly obvious that these two questions are substantially different, and can not be considered or answered as one question.

In determining whether or not this demurrer is well taken, it will be considered as though the causes of action were separately stated and numbered.

The defects in the proceedings cancerning the issuance of the bonds as claimed by the plaintiffs, may be stated as follows:

First: That the resolution declaring the purpose· of the bond issue passed September 1, 1937, is indefinite, uncertain and incomplete.

. Second: That said resolution did not fix the rate of interest as provided by law. .

Third: That no explanation of the bond issue was given the electors.

Fourth: That the city planning commission did not approve the plan of the improvement prior to the submission of the bond issue to the vote of the electors.

The claims of the plaintiffs as to illegality in the proposed use of the funds· secured from the sale of the bonds are:

First: That the resolution of February 21, 1940, is an unlawful delegation of legislative power.

Second: That no fiscal officer can attach a certificate that an appropriation has been made to pay the expense of maintaining the improvement.

The power of political subdivisions of this state to issue bonds is granted by the **Constitution (Art. XII, Sec. 2)** and while the legislature may define the manner of exercising that power, it can not abridge or deny it.

Where the municipality deems it necessary or expedient to issue bonds outside the tax limitations (as in this case), it must secure the approval of the proportion of the electors voting on said question, required by the statute, before such bonds may be issued.

Where the requisite proportion of the electors grant authority to issue bonds for any purpose, and the authority so granted is challenged, it is not the function of the court to be concerned with the wisdom or expediency of the purpose, but only to determine whether or not the requirements of the law have been fulfilled.

The petition nowhere sets forth the result of the election upon the question of authority to issue these bonds, but under the well known doctrine of judicial notice, which applies to pleadings as well as evidence, the fact that the electors did approve this bond issue is of sufficient common knowledge that the court in its discretion will judicially notice that fact.

The claims of plaintiffs will be disposed of in the order stated.

First: "That the resolution declaring the purpose of the bond issue passed September 1, 1937, is indefinite, uncertain and incomplete."

The general rule as to preliminary ordinances or resolutions with regard to bond issues is that the ordinance or resolution must by fair and natural construction convey a reasonable certainty of meaning to the average intellect.

The purpose clause of the resolution here in question reads as follows:

"Declaring the necessity and authorizing the submission to a vote of the people of a bond issue in the sum of five million ($5,000,000) dollars for the purpose of paying the city's portion of the cost and expense of installing the necessary structures and making the necessary improvements for the prevention of damage by floods in the Ohio River and its tributaries, etc."

**Sec. 2293-19 GC**, which prescribes the mode of procedure to submit a bond issue to the electors reads as follows:

"The taxing authority of any subdivision may submit to the electors of such subdivision the question of issuing any bonds which such subdivision has power to issue. When it desires or is required by law to submit any bond issue to the electors, it shall pass a resolution declaring the necessity of such bond issue, and fixing the amount, purpose and approximate date, interest rate and maturity, and also the necessity of a levy of a tax outside the limitation imposed by **Art. XII, Sec. 2 of the Constitution** to pay the interest on and to retire said bonds. It shall certify such resolution to the county auditor at least sixty (60) days prior to the election at which it is desired to submit such question. Thereupon, and more than fifty (50) days prior to such election, the county auditor shall calculate and certify to the taxing authority the average annual levy throughout the life of the bonds which will be required to pay the interest on, and retire, such bonds, assuming that they are all issued in one series and that the amount of the tax list of such subdivision remains throughout the life of said bonds the same as the amount of the tax list for the current year, and if this is not determined, the estimated amount submitted by the auditor of the county budget commission. Thereupon the taxing authority, if it desires to proceed with the issue of such bonds, shall, more than forty (40) days prior to such election, certify this resolution,

together with the amount of the average tax levy estimated by the county auditor, and the maximum number of years required to retire. the bonds, to the deputy state supervisors of elections of the county who shall prepare the ballots and make other necessary arrangements for the submission of the question to the voters of said subdivision."

Tested by the terms of the statute, and keeping in mind that this bond issue was submitted to the electors of the city during the same year (1937) that the city had suffered from the most devastating flood in its history, it is entirely clear that this resolution did convey to any and every one able to read and understand the English language, that the purpose of the bond issue was to construct improvements for the prevention of damage by floods.

More detail was stated as to the mode of making such improvements than was necessary or essential.

Second: "That the resolution did not fix the rate of interest as provided by law."

The language of the resolution in this respect is:

"And to bear interest at the rate now estimated at three per cent (3%) per annum, payable semi-annually."

This claim calls for interpretation of the language of §2293-19 GC. The language in this connection is:

"When it desires or is required by law to submit any bond issue to the electors, it shall pass a resolution, declaring the necessity of such bond issue and **fixing the amount, purpose and approximate date, interest rate, and maturity,** etc."

There is no claim that the city contemplates issuing any of these bonds at a rate of interest exceeding three per cent per annum.

The question presented is whether or not in a resolution of necessity, the approximate interest may be set forth —in other words: Does the word **approximate** used in the statute apply only to the date, or does it apply to the interest . rate and maturity as well as the date; and further, whether or not the words **"now estimated at"** comply with the provisions of the statute.

If **§2293-19 GC,** stood alone, it would be my conclusion that, considering the punctuation used; the word **approximate** only applied to the date, but considering the other language of this same section, together with the further fact that this section is only a part of the Uniform Bond Act, and that all sections must be read **in pari materia,** the conclusion becomes irresistible that the word **approximate** refers to date, rate of interest and maturity, and was placed in the statute rather for the information of the county auditor than for the information of the voters.

My reasons for this conclusion are these: **§2293-19,** after using the language quoted, further provides that a copy of the resolution shall be certified to the county auditor sixty days prior to the election at which the question shall be submitted, and he, more than fifty days prior to such election, shall certify to the taxing authority the average annual levy throughout the life of the bonds which will be required to pay the interest on, and retire, such bonds.

Sec. 2293-23 provides the form of the ballot and the elector does not vote upon the rate of interest that the bonds shall carry, but does vote upon the average number of mills to be added to the tax rate and the number of years that the addition shall be made.

Sec. 2293-26 provides that when the bonds are actually to be issued, the council shall pass an ordinance or resolution which shall fix the date, rate of interest and maturity, which, however, need not be the same as those fixed in the prior resolution or ordinance.

Sec. 2293-28 provides among other things:

"Any one desiring to do so may present a bid or bids for such bonds based

upon their bearing a different rate of interest than specified in the advertisement, etc."

Reading and construing these sections as component parts of one complete act, to me it is clear that it was never intended that the interest rate was to remain fixed and constant.

The words **"now estimated at"**, as used in the resolution of ▉▉▉▉ ▉ necessity, are synonymous with the word **approximate** as used in the statute.

Third: "That no explanation of the bond issue was given to the electors."

The charter of the city provides:

"Not less than ten days prior to any election at which one or more ordinances or other measures are to be submitted to the voters for their approval or disapproval in pursuance of initiative or referendum petitions, the clerk of council shall transmit to each registered voter a pamphlet containing the title and text of each measure together with any argument or explanation filed as provided by §10-1 and §10-2."

It is claimed by plaintiffs that this proposed bond issue was included within this provision of the charter. This claim is entirely untenable. This submission was ▉▉▉▉ ▉ for the purpose of authorizing the issuance of five million ($5,-000,000) dollars outside of tax limitations, and was in no sence a referendum.

A referendum, as used in the constitution, statutes and charter, is the submission of the question of whether or not a statute, ordinance or resolution already passed by the legislative body shall become effective; the result, if the legislation is condemned, being a repeal of the statute, ordinance or resolution by the electors.

The question here was whether or not the electors would grant authority to issue the bonds.

Fourth: "Action of council was not preceded by action of planning commission."

That the city planning commission has adopted a city plan admits of no dispute.
Section 5 of the charter provides:

"No public building, street, boulevard, parkway, park, playground, canal, river front, harbor dock wharf, bridge, viaduct, tunnel and publicly or privately owned public utility or part thereof shall be constructed or authorized to be constructed until and unless the location thereof be approved by the commission."

This section has no application to a subject matter such as here under consideration. It must be re-▉▉▉▉ ▉ membered that the Ohio River is one of the navigable waters of the United States and under the United States Constitution is under the jurisdiction of the Federal Government; but even if the section did apply there is nothing in the language to indicate that a plan must be approved prior to securing the authority to make the improvement; the section only means that before construction or authority to construct any improvement at a particular place in the city, the approval of the planning commission must be obtained. To hold otherwise would be to say that the city must go to the expense of drawing plans for every contemplated improvement and secure the approval of the planning commission before council could take up and decide whether any improvement should be made.

The final complaint made by plaintiffs has to do with the proposed use of the fund derived from the sale of the bonds.

It is claimed that by virtue of the resolution of February 21, 1940, the manager is about to enter into some agreement with the Secretary of War, pursuant thereto. It is contended:

First: "That this resolution is an unlawful delegation of legislative power."

There is no allegation in the petition that the city proposed to use any of the proceeds of the bond issue in question for any of the purposes mentioned in the last above quoted resolution, and for that reason plaintiffs have not stated a cause of action; but assuming that part of the proceeds were to be so used, would the plaintiffs then be entitled to relief?

The city under this resolution, is to pay the cost of all lands, etc., necessary for the construction of flood protection works, to properly protect the Millcreek Valley. The city is also to save the government of the United States free from damage due to the construction of such works, and the government of the United States is to construct the works without cost to the city.

The result of the contemplated plan if carried into effect is, that the United States Government relieves the city and its taxpayers of all cost in connection with the construction of the improvement.

Sec. 18, GC, authorizes the city to receive gifts and hold and apply the same according to the terms of the gift.

The resolution then provides:

(c) "Maintain and operate all works after completion in accordance with regulations prescribed by the Secretary of War."

If the building of the necessary structures and installations to protect Millcreek Valley from damage by flood be a gift, then any condition such as is imposed by Section "c" is valid. On the other hand, if it be purely a city project, then Section "c" only provides for the doing of that which the city is bound to do.

The confusion in attempting to determine whether or not this improvement is to be a gift from the United States government or is a city project, results from the fact that the council passed the resolution. In ██ any event there is no delegation of legislative power.

Second: "That no fiscal officer can attach a certificate that an appropriation has been made to pay the expense of maintaining the improvement."

In support of this contention, §5625-33 GC is called to the attention of the court.

This claim is predicated upon the mistaken notion that sub-section "c" of this resolution authorizes the expenditure of money. Sub-section "c" makes only a promise to ██ perform a duty which the city is legally bound to perform, and in no sense authorizes or directs the spending of any money; if plaintiffs' contention should be sustained, it would render the municipality impotent to construct any improvement unless the money were then in the treasury to maintain it, and would apply to roads, streets, buildings, or any other permanent improvement.

The proceedings of council to issue these bonds in my opinion comply with the provisions of law, and the claimed defects in such proceeding are not sustained in law; the proposed use of all or part of such bonds for the purpose of carrying into effect the resolution of February 21, 1940, (if such be the purpose), is not illegal.

The demurrer should be, and is hereby sustained.

Plaintiffs will be granted fifteen days in which to amend the petition, if desired, at the expiration of which time, if no amendment is filed, judgment will be entered for the defendants.